UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| CONSTANTINE DACTELIDES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CAUSE NO. 3:12-cv-230-CAN |
| SOUTH BEND COMMUNITY | ) | |
| SCHOOL CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**OPINION AND ORDER**

On May 2, 2012, Plaintiff, Constantine Dactelides ("Dactelides"), proceeding *pro se*,

filed a complaint against the South Bend Community School Corporation ("SBCSC"), Gene

Hollenberg, and Christine Pochert,[1] in this Court alleging violations of the Americans with

Disabilities Act, 42 U.S.C. § 12101 for discrimination based on disability and retaliation. This

order will address the following two motions ripe and pending in this action.

On November 19, 2012, Dactelides filed his Objection to the Defendant's Proposed

Expert Testimony seeking exclusion of SBCSC's expert Dr. Robert Shuman. On November 28,

2012, SBCSC filed its response in opposition. To date, Dactelides has not filed a reply.

Subsequently, on February 7, 2013, SBCSC filed its Motion for Dismissal or Alternative Motion

for Summary Judgment.[2] On March 11, 2013, Dactelides filed a response. On March 22, 2013,

SBCSC filed a reply.

---

[1]Defendants Hollenberg and Pochert have since been dismissed from this action leaving SBCSC as the only remaining Defendant. *See* Doc. No. 109. Therefore, the Court will only reference SBCSC.

[2]The memorandum in support of this dispositive motion filed on February 11, 2013, is the operative memorandum based on this Court's order dated February 8, 2013, granting in part Defendants' motion for leave to file excess pages.

On June 20, 2013, the Court held oral argument on several pending motions, including both of these motions.  In its related order dated July 1, 2013, the Court reserved judgment on these two motions allowing the parties additional time to supplement the record.  On July 3, 2013, Dactelides filed his "Supplemental Discovery; Exhibits Reflecting Medical History as well as Defendant's ADA Discrimination Violations" and "Supplemental Request for Production of Documents from Defendant South Bend Community School Corporation and its Expert Witness Dr. Robert M. Shuman."  SBCSC filed nothing further to supplement the record.  The Court will consider Dactelides' filings along with the established record on these two motions in reaching its conclusions below.  The Court issues the following opinion resolving both motions as discussed below pursuant to the consent of the parties and 28 U.S.C. § 636(c).

## I.    RELEVANT BACKGROUND

The following facts are primarily not in dispute.  Where the facts are in dispute, this Court has determined that the disputes are either not material or has chosen to address such disputes in the Court's substantive analysis of the issues.

On July 1, 2010, SBCSC hired Dactelides to be the Director of the 21st Century Community Learning Center ("21st CCLC"), a program funded through a grant awarded to SBCSC by the Indiana Department of Education ("IDOE") and the United States Department of Education ("USDOE").  The 21st CCLC provided academic enrichment and youth development for South Bend students through after-school and weekend activities at Riley and Washington High Schools.  Dactelides' duties included gathering and reporting data to the IDOE, the Center for Evaluation & Education Policy and Indiana University Bloomington and then to the USDOE.

At a year-end staff meeting on June 2, 2011, Dactelides informed Christine Pochert, an SBCSC grant writer, and SBCSC Director of Athletics Kirby Whitacre that he had been diagnosed with multiple sclerosis and would be hospitalized and away from work from June 6 through June 10, 2011.  Dactelides utilized Family and Medical Leave for those five days of absence.  Doc. No. 82-1 at 5.

In July 2011, the principal of Riley High School, Dr. Edward Bradford, Jr. met with Dactelides and confirmed through a written memorandum that Dactelides needed to maintain proper communication with parents of the students involved in the 21st CCLC program.  Doc. Nos. 82-1 at 7; 110-2 at 2.  The memo also informed Dactelides that he must secure approval from Bradford for future field trips involving Riley High School students.

On August 3, 2011, Dactelides hired Leslie Ann Waters Wesley as part of the 21st CCLC staff.  Doc. No. 82-1 at 9–15.  Wesley's duties overlapped with Dactelides.  *See id.* at 14–15.  On August 16, 2011, Dactelides met with Pochert, John Roggeman, SBCSC Director of Employee Relations, and Dr. Cynthia Oudghiri, SBCSC Director of Intermediate Programs, and discussed the Wesley hire.  Having been told that he lacked authority to hire Wesley, Dactelides stated that he understood he had made a mistake.  Doc. No. 82-14 at 6.  SBCSC placed Dactelides on paid administrative leave beginning on August 16, 2011, as confirmed in writing by Roggeman on August 18, 2011, until it could be determined how to proceed following the Wesley agreement. *See id.* at 5–6.

While on paid administrative leave, Dactelides called Oudghiri twice on August 17, 2011, and once on August 18, 2011, requesting a meeting with Superintendent, Dr. Carole Schmidt, and complaining about his role in the 21st CCLC and his treatment following the hiring

of Wesley.  Doc. No. 82-2.  Also on August 18, 2011, Dactelides e-mailed Schmidt directly

requesting a meeting and stating that he was being harassed by SBCSC.  Doc.No. 82-1 at 20.

Schmidt responded saying,

> I am aware of some of the issues you indicated.  We are currently doing our
> research about the programs and opeations [sic] of the program related to your
> responsibilities.  Once this is complete, I along with all other interested parties,
> will meet with you.

*Id.*  Dactelides replied via e-mail directed to "Carole" saying,

> This is a railroad and nothing short of corruption.  I did not do anything wrong
> and am being insulted for having to 'wait' while you all do a witch
> hunt/investigation.  There are no other interested parties because I did nothing
> wrong.

*Id.*

On August 19, 2011, at approximately 8:45 a.m., Dactelides again contacted Oudghiri

complaining about being placed on paid administrative leave.  Doc. No. 82-2 at 2–3.  On that

same day, the school corporation issued a Trespass Notice warning Dactelides not to enter the

premises of the "Administrative Building, Riley and Washington High Schools."  Doc. No. 82-1

at 22.  Also on August 19, 2011, Dactelides filed a charge of discrimination with the South Bend

Human Rights Commission ("SBHRC") claiming that SBCSC discriminated against him on the

basis of his disability in violation of the ADA when he was placed on paid administrative leave.

Doc. No. 82-10 at 5.

On August 22, 2011, Pochert received an e-mail from Dennis Banas, President and CEO

of Praxis Strategies & Solutions, Inc., a partner with whom SBCSC had contracted related to

data collection for the 21st CCLC, regarding his interaction with Dactelides on August 19th.

Doc. No. 82-4 at 3.  The e-mail indicated that Dactelides had "accosted" him and that

4

Dactelides' behavior and verbal assault caused him to file an incident report with the manager of the premises as well as a police report in order to lay the foundation for a restraining order. *Id.*

On August 31, 2011, Oudghiri spoke with Dré Knox, Director of the Indiana Department of Education, regarding the funding of the 21st CCLC. Doc. No. 82-2 at 8. During the conversation, Knox also reported that he had been too lenient with Dactelides regarding his failure to timely complete and submit reports and that noncompliance letters should have been issued. *Id.* On that same day, Oudghiri scheduled a meeting with Dactelides on September 8, 2011. *Id.*

Also on August 31, 2011, Dactelides attempted to reach the SBCSC Director of Communications in order to secure an Administrative Handbook. Doc. No. 82-6 at 3. The Director was not available and Dactelides spoke with her Secretary, Mindy Valentiny, who reported that he complained about being railroaded by the SBCSC and that he intended to take the problem public. *Id.* She also stated that the "whole conversation was [Dactelides] screaming, yelling and rambling from one subject to the next" making him seem unstable and causing her to be shaking and fearful for the safety of employees if he were allowed to enter the building. *Id.* She reported that Dactelides accused another SBCSC employee, Valerie Wrun, of being part of the problem he has with SBCSC because she blocked his number so that his phone calls would not be accepted. *Id.* After reviewing Valentiny's notes from her conversation with Dactelides, Wrun informed SBCSC that because of Dactelides' "direct, false and threatening accusations toward me, I now feel personally targeted in my work environment. . .[and] share Mindy's concern for the safety of our employees." Doc. No. 82-8 at 2.

On September 1, 2011, SBCSC received a letter from John VanderWiede, the Riley High

School Site Coordinator for the 21st CCLC, detailing deficiencies in Dactelides' work performance.  Doc. No. 82-7 at 4.  VanderWiede's concerns focused on Dactelides' disorganization and lack of follow through that resulted in overspending and delayed or unfiled data reports to the State among other things.  *Id.*  On that same day, Whitacre e-mailed Oudghiri and Pochert explaining that Dactelides had failed to provide him with the detailed statistics he requested to complete a report required by the Board.  Doc. No. 82-13 at 4.  In general, Whitacre stated that Dactelides "floundered without supervision and support . . . and . . . failed to exhibit leadership and certainly not organizational skills." *Id.*

On September 6, 2011, Dactelides met once again with Roggeman, Oudghiri, and Pochert.  The meeting was intended to address some of Dactelides' performance issues and to set the stage for Dactelides to continue working with the 21st CCLC.  Doc. No. 82-14 at 3.  However, the meeting ended without resolution to any issues because Dactelides "recanted his admission that he lacked the authority to contract on behalf of [SBCSC],. . . contended that he did have this authority, and . . . demanded proof that he lacked such authority."  Doc. No. 82-14 at 3.  Subsequently, Dactelides called Oudghiri on September 8, 2011, indicating that "he was going to violate the No Trespass order imposed, and to go to Riley High School where he hoped to be arrested."  Doc. No. 86-2 at 3.  He also called Judy Parmley, an SBCSC secretary, that same date and was very upset.  Doc. No. 86-9.

On September 9, 2011, Superintendent Schmidt met with Dactelides and presented him with a termination letter ending his employment as the 21st CCLC Program Director.  In the letter, she cited the unauthorized Wesley hire; the hostile, harassing, and threatening discussions and phone calls with SBCSC employees; deficiencies in work performance; and

uncooperativeness when given the opportunity to discuss issues associated with his conduct. Doc. No. 86-3 at 3.  Despite the rationale expressed in his termination letter, Dactelides believed that "his life was attacked and taken from him through a clear conspiracy built on fabrications and untruths...[which constituted] a clear and blatant ADA Subordinate Bias Discrimination violation."  Doc. No. 99 at 6.

Dactelides then filed his second charge of discrimination with the SBHRC on September 12, 2011, alleging that his termination was in retaliation for his the first charge of discrimination that he filed.  Doc. No. 86-10 at 2.  The SBHRC found that no probable cause existed for either of Dactelides' claims on January 20, 2012.  *Id.* at 6–9.  The Equal Employment Opportunity Commission adopted the SBHRC's findings as to both of Dactelides' charges and issued right to sue letters on March 12, 2012.  *Id.* at 3–4.  Dactelides then filed his complaint in this Court on May 2, 2012.  Discovery closed on January 4, 2013.

II.   ANALYSIS

A.    SBCSC's Motion for Dismissal or Alternative Motion for Summary
      Judgment, Doc. No. 81

1.    Standard of Review

Despite SBCSC's argument that Dactelides failed to state a claim for which relief can be granted under Rule 12(b)(6), the Court converted the instant motion into a motion for summary judgment under Fed. R. Civ. P. 12(d).  *See* Doc. No. 109 at 3.  Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922 (7th Cir. 2001).  In determining whether a genuine issue of

7

material fact exists, this Court must construe all facts in the light most favorable to the nonmoving party as well to draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *King v. Preferred Technical Group*, 166 F.3d 887, 890 (7th Cir. 1999).

To overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings.  Rather, the nonmoving party must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial.  *Celotex v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000).  Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In other words, "[s]ummary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events."  *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted).[3]

### B.    Dactelides' ADA Claims Fail

In his first Charge of Discrimination against SBCSC filed with the SBHRC, Dactelides

---

[3]On February 7, 2013, SBCSC served Dactelides with notice outlining the summary judgment process and its potential outcomes as required by N.D. Ind. L.R. 56-1(f). [Doc. No. 84].  On June 20, 2013, at oral argument, the Court also verbally advised Dactelides of his burden at the summary judgment stage to present all his evidence in support of his allegations quoting the Seventh Circuit's holding that summary judgment is the "put up or shut up moment of the lawsuit."  Later in the oral argument, the Court reiterated that Dactelides must present all his evidence to the Court in response to SBCSC's motion for summary judgment because there may not be a trial if the Court finds that Dactelides did not support his allegations with sufficient evidence.  To ensure that Dactelides had full opportunity to present all his evidence, the Court reserved judgment on the motion for summary judgment at oral argument and afforded both parties an additional two weeks to supplement the summary judgment record.  *See* Doc. No. 109.

checked the box reflecting "discrimination based on disability" and indicated that the earliest

date of discrimination was August 16, 2011, and that the latest date of discrimination was

August 16, 2011.  Doc. No. 82-10 at 5.  The Charge reads:

> I am a male employed by the South Bend Community School Corporation.  I was hired on July 1, 2010 as a Program Director of 21st Century Community Learning Centers.  I was diagnosed with a disability in May 2011.  I was placed on paid administrative leave on August 16, 2011.  I was accused of actions against me that are lies and this all started following my diagnosis.  I believe I have been discriminated against on the basis of my disability, which is in violation of the American [sic] with Disabilities Act, as amended.

*Id.*  In his second Charge of Discrimination against SBCSC filed with the SBHRC, Dactelides

checked the box reflecting "discrimination based on retaliation" and indicated that the earliest

date of discrimination was September 9, 2011, and that the latest date of discrimination was

September 9, 2011.  Doc. No. 82-10- at 2.  The Charge reads:

> On August 19, 2011, I filed charge of discrimination, EEOC #24M-2011-00280, FEPA#2011-066, against my employer, South Bend Community School Corporation.  Superintendent Carole Schmidt terminated me on September 9, 2011.  My employer alleged that I violated company policies, and I believe that I was terminated in retaliation because of my participation in an employment discrimination proceeding.  In addition, I recently learned that my employer breeched [sic] my confidential information by sharing the reason for my termination with an independent contractor.  I believe that I was retaliated against which is in violation of the American [sic] with Disabilities Act, as amended.

*Id.*  Notice to sue letters for both charges were mailed to Dactelides on March 12, 2012.  Doc.

No. 82-10 at 3–4.  Dactelides filed his complaint in this Court on May 2, 2012.

However, the way Dactelides outlines his allegations in his complaint makes it difficult

to discern exactly what claims against SBCSC he is asserting.  Based on the SBHRC Charges,

the Court assumes that Dactelides is pursuing claims of disability discrimination and retaliation

under the ADA.  However, Dactelides' deposition testimony and written discovery responses

could be interpreted as claims of hostile work environment harassment, failure to make reasonable accommodations under the ADA, discrimination under the Rehabilitation Act of 1973, defamation, and obstruction or interference with Plaintiff's right to obtain counsel as well. As a result, SBCSC now argues that Dactelides' claims in this action should be limited to disability discrimination and retaliation, the claims clearly alleged in the SBHRC Charges.

1. **Only Dactelides' claims of disability discrimination and retaliation under the ADA are valid.**

Generally, a plaintiff in an employment discrimination case "can only bring those allegations into federal court that he included in his administrative charge of discrimination." *Kicinski v. Alverno Clinical Labs., LLC*, Civil No. 2:09cv321, 2009 WL 4611427, at *1 (N.D. Ind. Dec. 1, 2009) (citing *Gawley v. Ind. Univ.*, 276 F.3d 301, 313 (7th Cir. 2001); *see also Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996).  Minimally, "the EEOC charge and the complaint must ... describe the same conduct and implicate the same individuals." *Gawley,* 276 F.3d at 313. The purpose of this requirement is to give the defendant-employer notice of the complaining party's allegations of wrongdoing and for the EEOC and the employer to conciliate those complaints. *Gawley,* 276 F.3d at 313–14. To determine whether a plaintiff's federal complaint allegations are within the scope of his administrative charge, the court determines whether it "is like or reasonably related to the allegations of the charge and growing out of such allegations." *Gawley,* 276 F.3d at 314.  A claim is "like or reasonably related" or grows out of the allegations in an administrative charge if there is a factual relationship between them and they describe the same conduct and implicate the same individuals. *Cheek*, 97 F.3d at 202–03 (finding that a disparate treatment claim was different from a harassment claim); *Ponziano v. W. & S. Life Ins. Co.*, Civil No. 2:11cv263, 2012 U.S. Dist. LEXIS 40037, at *12–13

(differentiating an ADA disparate treatment or wrongful discharge claim from a failure to accommodate claim); *see also Sickinger v. Mega Sys., Inc.*, 951 F. Supp. 153, 155 (N.D. Ind. 1996). However, administrative charges are to be construed liberally recognizing that they are often drafted without the assistance of counsel. *See Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U. A.*, 657 F.2d 890, 906 (7th Cir. 1981).

SBCSC argues that Dactelides alleged conduct in his complaint that occurred prior to the date of the first alleged violation noted on the first SBHRC charge. Indeed, Dactelides supports his claims of discrimination with descriptions of Pochert's conduct, including allegedly threatening e-mails in June 2011, conversations with the IDOE and IYI in July 2011, and her relieving him of budget duties in early August 2011, that all occurred before August 16, 2011, the date listed on the SBHRC Charge as the earliest date of discrimination. Dactelides rebuts SBCSC's argument by contending that a SBHRC employee, who completed the Charge form for him, inserted the wrong dates on the form. Dactelides states in his response brief that the earliest date of discrimination should have been June 3, 2011.

The Court is not impressed with Dactelides' late attempt to correct a potential error on the SBHRC charge form. Even if he did not complete the form himself, he signed it. Before signing it, he should have verified its content. Alternatively, he could have sought to amend the charge even after signing it. Instead, all he did was make a bald conclusory statement here without any evidence to support his assertion.

Nevertheless, in his Charge, Dactelides stated: "I was accused of actions against me that are lies and this all started following my diagnosis." Doc. No. 82-10 at 5. Knowing that he was diagnosed in late May or early June of 2011, it is clear that Dactelides is expressing concern

11

about conduct against him throughout the summer of 2011.  Therefore, Pochert's conduct is properly included in Dactelides' complaint.  Moreover, Dactelides' references to "actions against me that are lies" and to claims that Dactelides "violated company policies" fit well with Dacteldies' apparent theory of his case.  Dactelides appears to believe that Pochert, Hollenberg, and other SBCSC employees conspired to get him fired because of his MS diagnosis by taking away certain key job responsibilities and fabricating untrue stories that maligned his professional reputation and created the appearance of poor work performance.  Therefore, upon a liberal reading of the SBHRC Charges, Pochert's conduct in the summer of 2011 is reasonably related to or grows from the allegations in the SBHRC charges.  Any claims arising out of her conduct are properly included in Dactelides' complaint and will be considered by this Court.

On the other hand, the only conduct alleged against Hollenberg is that he gave Dactelides the wrong budget when he was hired on July 1, 2010.  This conduct occurred long before the summer of 2011.  Therefore any claims in Dactelides' complaint that rely upon Hollenberg's conduct are improperly included and will not be considered by this Court.

Yet the scope of claims against SBCSC still remains unclear.  The Court refuses to consider any claims under the Rehabilitation Act because neither the SBHR Charges nor the complaint cite the statute.  Further, the Court will not consider any hostile work environment or obstruction or interference with opportunity to obtain counsel claim because Dactelides admits that he is not making such claims.  Doc. No. 99 at 11.  Similarly, Dactelides did not mention any failure to accommodate or defamation claim in his response brief.  Because Dactelides did not raise and develop those arguments, he has waived them. *See Campbell v. Hall*, 624 F. Supp. 2d 991, 1008–09 (N.D. Ind. 2009) (citing *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th

Cir.1991).  Moreover, the Court's role is not organizing and formulating arguments for a party like Dactelides.  *See id.*  Dactelides must present evidence to the Court in his brief related to this summary judgment motion rather expect the Court to search the record to find evidence to support his arguments against summary judgment.  *See id.*

The Court acknowledges Dactelides' asserted theory that SBCSC and its counsel have bullied him since June 2, 2011, and throughout this lawsuit with conspiratorial acts of deceit and threats in an attempt to justify SBCSC's alleged discriminatory conduct.  *See* Doc. No. 110 at 6. Dactelides believes that SBCSC has withheld discovery and scared potential witnesses such that he is unable to provide any evidence of discrimination at this time and will only be able to do so through subpoenaed witness testimony at trial.  *See, e.g.*, *id.*; Doc. No. 114 at 4–5.  The Court addressed Dactelides' claims of withheld discovery in its order resolving Dactelides' motion to compel filed in September 2012.  *See* Doc. No. 51.  Dactelides has not filed any motion seeking redress for alleged threatening conduct during the pendency of this action.  These continuing allegations appear to be excuses for the quality and quantity of evidence that Dactelides has, or has not, been able to produce in support of his opposition to SBCSC's motion for summary judgment.  They are not claims raised in Dactelides' complaint.  Therefore, the Court will only consider Dactelides' disability discrimination and retaliation claims here.

### 2.    Dactelides' claim of disability discrimination fails.

Under the ADA, it is unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  The ADA defines disability

"with respect to an individual [as] a physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment."  42 U.S.C. § 12102 (1).  A disabled plaintiff can prove disability discrimination by using either the direct or indirect method of proof.  *Dickerson v. Bd. of Trs. Of Cmty. Coll. Dist. No. 522*, 657 F.3d 594, 601 (7th Cir. 2011) (citing *Robin v. ESPO Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000).

> **a.     Dactelides' claim for disability discrimination fails under the direct method of proof.**

"Under the direct method, a plaintiff can present either direct or circumstantial evidence to meet its burden."  *Id.* (citing *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004); *Bekker v. Humana Health Plan, Inc.*, 229 F.3d 662, 670 (7th Cir. 2000)).  "Direct evidence requires an admission by the decision maker that his or her actions were based upon the prohibited animus."  *Id.* (citing *Buie*, 366 F.3d at 503).  "The type of circumstantial evidence that a plaintiff may produce to survive summary judgment includes: (1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action."  *Id.* (citing *Diaz v. Kraft Foods Global, Inc.,* 653 F.3d 582, 586–87 (7th Cir.2011); *Burnell v. Gates Rubber Co.,* 647 F.3d 704, 708 (7th Cir.2011)).

Dactelides fails to provide direct evidence, such as an admission by Superintendent Schmidt, who terminated Dactelides, or Director of Employee Relations Roggeman, who formally implemented Dactelides' paid administrative leave, that SBCSC's decisions were based on Dactelides' MS diagnosis.  However, Dactelides attempts to prove his allegations of disability

discrimination by weaving a mosaic of circumstantial evidence based on conduct by SBCSC employees that took place during the summer of 2011.  *See Davis v. Con-Way Trans. Cent. Express, Inc.*, 368 F.3d 776, 783 (7th Cir. 2004) (noting that direct evidence in a race discrimination case can consist of "a convincing mosaic of circumstantial evidence that points directly to a discriminatory reason for the employer's action" (citations omitted)).  Specifically, Dactelides contends that Pochert's conduct of insulting and unprofessional e-mails to him in June 2011, her contact with the IDOE and IYI instructing them to halt contact with Dactelides and direct all communication regarding the 21st CCLC to her in July 2011, and her removing his budget responsibilities in August 2011 were part of a conspiracy that led first to his paid administrative leave beginning on August 16, 2011, and his termination on September 9, 2011.

Dactelides alleges that as part of the conspiracy, SBCSC administrative staff and executive officers fabricated stories that he threatened and harassed staff after being placed on paid administrative leave and before being terminated.  In addition, he accuses the alleged conspirators of fabricating stories of his poor work performance in order to hide their intent to terminate him for his MS diagnosis.  As evidence, Dactelides cites the memo dated July 26, 2011, from Riley High School Principal Edward Bradford, Jr., which addressed issues with Dactelides' work performance in July 2011.  Dactelides claims that he never received the letter and emphasizes the lack of Bradford's signature on the memo; the "insulting and bullying overtones, language, and communication style" that Bradford never used with Dactelides before; and Bradford's knowledge that no field trip was cancelled as proof that the letter was fabricated. Doc. No. 110 at 2–3.

Even viewing the evidence in the light most favorable to Dactelides as the non-moving

15

party for the purposes of summary judgment, however, the Court finds no convincing circumstantial evidence in the record to support Dactelides' conspiracy theory. First, the timing of Dactelides' administrative leave and termination is not suspicious. The Court acknowledges that Dactelides' administrative leave followed closely on the heels of the Wesley contract as evidenced by Roggeman's letter on August 16, 2011, suggesting a direct connection between the investigation of the Wesley contract and Dactelides' administrative leave. *See* Doc. No. 82-14 at 5. This is a disability discrimination case though. And Dactelides' paid administrative leave came more than two months after he allegedly informed Pochert and Whitacre of his MS diagnosis, the source of Dactelides' alleged disability. The termination followed even later, more than three months after the diagnosis.

Second, Dactelides provides no evidence that SBCSC or any of its agents made any ambiguous statements to other disabled employees. Third, he provides no evidence of systematically better treatment of similarly situated non-disabled employees. Dactelides did list nine SBCSC employees and Mr. Banas from IYI in an attempt to show such systematic treatment, but includes no facts to support his claim that they were similarly situated and even admits that their work was not at all similar to his as 21st CCLC Director. *See* Doc. No. 99 at 10. Dactelides appears to be claiming that SBCSC treated the listed individuals better in general than they treated him. Yet even if that is true, it is not sufficient to meet the standard to establish disability discrimination.

Lastly, Dactelides has not supported his contention that SBCSC's claimed reasons for firing him—that he violated company policies by hiring Wesley; that he engaged in harassing and threatening behavior against SBCSC staff; and that he jeopardized SBCSC's future

16

participation in the 21st CCLC grant program through his tardy data reporting—were pretextual. Conversely, SBCSC has put forward evidence that, at least at one point, Dactelides admitted that he lacked authority to hire Wesley, that he got angry and expressed that to the staff, and that his data reports to the State were late.[4]  Despite Dactelides' attempt to use circumstantial evidence to paint a picture of disability discrimination, the evidence before the Court paints a picture of a termination for just cause due to poor work performance and uncooperative behavior.  Therefore, Dactelides fails to prove disability discrimination under the direct method of proof.

### b.    Indirect Method of Proof

"Under the indirect method of proof, a plaintiff must first establish a *prima facie* case of discrimination by showing that (1) he is disabled under the ADA; (2) he was meeting his employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees without a disability were treated more favorably."  *Id.* (citing *Lloyd v. Swifty Transp., Inc.,* 552 F.3d 594, 601 (7th Cir.2009); *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (establishing standard under Title VII of Civil Rights Act)).  "Once a plaintiff has established a *prima facie* case, the defendant must identify a legitimate, non-discriminatory reason for its employment decision."  *Id.* (citing *Rooney v. Koch Air, LLC,* 410 F.3d 376, 381 (7th Cir.2005)).  "If the defendant satisfies this requirement, the plaintiff must then prove by a preponderance of the evidence that the defendant's reasons are pretextual."  *Id.* (citing *Lloyd,* 552 F.3d at 601).

Using the indirect method of proof, Dactelides fails to establish the first prong, that he is disabled under the ADA.  Even though Dactelides has provided medical records establishing that

---

[4]Dactelides argues that the delays would not have jeopardized the grant because he had permission from Dre Knox to turn in the reports late due to his illness.

he was diagnosed with multiple sclerosis, he has not shown this Court that his MS "substantially limits one or more major life activities" as required to establish a disability under the ADA. *See* 42 U.S.C. § 12102 (1)(A). He has alternatively failed to prove that SBCSC regarded him as disabled. *See* 42 U.S.C. § 12102 (1)(C). "A person is 'regarded as disabled' when the employer, rightly or wrongly, believes that she has an impairment that substantially limits one or more major life activities." *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 335 (7th Cir. 2004). Dactelides claims that SBCSC's knew of his MS diagnosis because he had disclosed the diagnosis to Pochert and Whitacre in June 2011. Knowing about a diagnosis and knowing about substantial limitations due to the diagnosed disease are two very different thing. And Dactelides has not provided any evidence that he informed anyone at SBCSC about substantial limitations he faced as a result of the disease.

Even if the Court considers Dactelides as "disabled" under the statute, it does not help Dactelides' case because he also fails to prove the second prong that he was meeting SBCSC's legitimate employment expectations. Dactelides provided some indirect statements amounting to evidence of his character in the form of newspaper articles to indicate his commitment to student success and the greater South Bend community. He also submitted an online article regarding the Washington High School ("WHS") Tutoring Project, which was a collaboration between the 21st CCLC at WHS and Bethel College. Specifically, Dactelides quoted:

> Recently, three schools in the South Bend School Corporation were put on the state takeover list because of low test scores. Two of these schools, Washington and Riley, were able to raise their test scores enough to get off that list, which James Kapsa[5], superintendent at the time, attributes to the 21st Century after-school programs at both Riley and Washington high schools.

---

[5]Dactelides also explained that Kapsa was his former supervisor and would be subpoenaed to testify at the trial in this matter.

Doc. No. 110-2 at 3.  Dactelides asserted that "this quote serve[s] as direct evidence Plaintiff was successful at his job."  *Id*.  The Court is not convinced.  This quote suggests that the 21st CCLC was successful.  It does not ever mention Dactelides specifically, however.  Many variables play into the success of any program.  This article alone does not prove that Dactelides was even a variable in that success.

Dactelides also touts his record of no disciplinary complaints or actions against him from 2002-2011 while working in South Bend as evidence that he was meeting his employer's expectations while he was the 21st CCLC Director.  However, only his performance while employed by SBCSC as the Director of the 21st CCLC from 2011-2012 is relevant to this case.  Dactelides has only made conclusory statements about his own character and strong work performance to suggest positive work performance without any support for such a claim in the form of performance evaluations or even affidavits from a supervisor.  On this prong alone, Dactelides has failed to establish a *prima facie* case of disability discrimination under the indirect method.  However, as already discussed, Dactelides also fails to prove the final prong, that similarly situated non-disabled employees were treated better than he was.

Because Dactelides can only prove that he did suffer an adverse employment action when he was fired and none of the other three required prongs of a *prima facie* case of disability discrimination, the Court finds that Dactelides' claim of disability discrimination fails under the indirect method as well.

### 3.    Dactelides' claim of retaliation fails.

The ADA prohibits employers from retaliating against employees who assert their rights under the Act to be free from discrimination.  42 U.S.C. § 12203(a).  Moreover, employers

cannot retaliate against employees raising ADA claims even if their initial claims of discrimination are meritless.  *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007). Plaintiff can establish a valid claim of retaliation using either the direct or indirect method of proof.  *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1117 (7th Cir. 2001).

### a.    Direct Method of Proof

"Under the direct approach, a plaintiff must present evidence of: (1) a statutorily protected activity; (2) an adverse action; and (3) a causal connection between the two."  *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006) (citing *Haywood,* 323 F.3d at 531, *as modified by Burlington Northern Santa Fe Ry. v. White,* 548U.S. 53 (2006)).  Dactelides' SBHRC Charge of disability discrimination filed on August 19, 2011 against SBCSC constitutes the statutorily protected activity.  And there is not doubt that Dactelides' termination constitutes an adverse employment action.  The only factor that remains for analysis is whether there is a causal connection between Dactelides' SBHRC Charge dated August 19, 2011, and his termination on September 9, 2011.  Dactelides has not put forth any direct evidence of a causal link between the two.

Dactelides relies solely on the temporal sequence and close proximity of his SBHRC Charge and the termination.  However, in other discrimination contexts, the Seventh Circuit has refused to allow suspicious timing alone to support an inference of a causal link sufficient to establish unlawful retaliation.  *See Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 616 (7th Cir. 2001) (Title VII); *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) (ADEA).  The Seventh Circuit has, however, held that causality should be decided by a jury when no intervening events occur between the protective activity—in this case the August 19, 2011,

20

SBHRC Charge—and the termination.  *See Benuzzi v. Bd. of Educ. of the City of Chicago*, 647 F.3d 652, 666 (7th Cir. 2011 (citing *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 664 (7th Cir. 2011); *Loudermilk v. Best Pallet Co.*, 636 312, 315 (7th Cir. 2011).  This is where Dactelides retaliation claim fails under the direct method of proof.

After Dactelides filed his first SBHRC Charge, he engaged in harassing and threatening conduct against SBCSC employees.  In addition, SBCSC continued learning about Dactelides' poor work performance through their investigation into the hiring of Wesley, which occurred after Dactelides was placed on administrative leave and just three days before the SBHRC Charge was filed.  Therefore, because there were intervening issues of work performance that came to SBCSC's attention after the SBHRC Charge, Dactelides has failed to prove sufficient causality to support his retaliation claim using the direct method of proof.

### b. Dactelides' retaliation claim fails under the indirect method of proof.

To succeed on a retaliation claim using the indirect method of proof, a plaintiff must show that after engaging in the statutorily protected activity of filing an EEOC charge "only he, and not any similarly situated employee who did not file a charge, was subject to an adverse employment action even though he was performing his job in a satisfactory manner."  *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644, (7th Cir. 2002).  Here again, Dactelides fails to produce evidence of employer actions toward similarly situated employees or evidence of his satisfactory job performance.  Therefore, Dactelides' retaliation claim also fails under the indirect method of proof.

Because Dactelides has not met his burden of proof under the summary judgment standard, SBCSC is entitled to summary judgment as a matter of law.  Dactelides' disability

discrimination and retaliation claims are now **DISMISSED**.

**IV.    CONCLUSION**

Dactelides consistently stated throughout his briefing on this motion, the oral argument before the Court, and in his supplemental filings that he would have evidence to produce at trial. Dactelides' failure to produce evidence upon which a jury could reasonably conclude that his paid administrative leave and termination were the result of discrimination based on disability or retaliation in response to SBCSC's motion for summary judgment has left the Court with the undisputed fact that SBCSC acted with just cause because Dactelides work performance did not meet SBCSC's legitimate expectations in multiple ways.  As a result, the Court now **GRANTS** SBCSC's motion for summary judgment. [Doc. No. 81]. The clerk is instructed to enter judgment for SBCSC.

Because all claims in this action have been dismissed, there is no need for the Court to address Dactelides' Objection to the Defendant's Proposed Expert Testimony or his Motion to Compel.  Therefore, both motions are **DENIED AS MOOT**. [Doc. No. 69 & 112].

**SO ORDERED.**

Dated this 5th day of September, 2013.

S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge